23-1069 et al. Delphi Gulf et al. Petitioners v. Federal Energy and Regulatory Commission Mr. Matthews for the petitioners, Ms. Chu for the respondents, Mr. Wamsbrad for the interviewers. Thank you. Thank you. Good morning. Good morning. Good morning. Nathan Matthews on behalf of Petitioners Healthy Gulf et al. I'd like to reserve three minutes for rebuttal. Excuse me. This case challenges FERC's approval of the Commonwealth Liquefied Natural Gas Export Terminal. This is the first LNG export terminal that FERC has approved since this Court's decision in Vecinos para el Bienestar de la Comunidad Costera et al. And Commonwealth is a massive infrastructure project. It will emit annually 3.6 million tons of greenhouse gases, which is more than 36 times FERC's proposed threshold for the significance of greenhouse gases. Commonwealth will also emit 550 tons per year of nitrogen dioxide, more than five times EPA's major source threshold under the Clean Air Act. And the majority of this pollution will fall on environmental justice communities. FERC failed to take a hard look at these impacts in violation of NEPA and the Natural Gas Act, including failing to look at ways to mitigate these impacts and to demonstrate that the project as a whole was consistent with the public interest. I'd like to start with greenhouse gas emissions. FERC has an obligation to determine whether these emissions are significant. FERC has the tools to do so, and FERC's refusal to do so here had material consequences for the rest of FERC's analysis. FERC does not appear to dispute that its own regulation at 18 CFR 380.7 requires FERC to determine whether each individual environmental impact is significant or not. And FERC makes that determination for every other type of impact. The EIS here addresses the significance of everything else. FERC argues that greenhouse gases are different because FERC claims it is impossible for FERC to make a significant determination for greenhouse gases. But the record demonstrates that FERC had at least two ways in which it could have done so. So can I stop you there? So your argument is, let me put it this way, if these two methods, if FERC adequately explained why those can't be used, that's the sum and substance of your argument, that this argument would fail if they adequately explained why they can't use these two specific methods.  Exactly. We do think that even if FERC explained that, if the court was persuaded by FERC's arguments with respect to the NEPA, is it significant or not determination, there still is a greenhouse gas argument under the public interest standard on whether greenhouse gas is factored into the public interest determination. But for the NEPA significance argument. For the NEPA significance argument, yes, we say that to FERC. Thank you. And so the first method, and probably the most straightforward, would have just been to make an adjudication in this particular case. FERC has done that before. In the Northern Natural Gas Pipeline case, FERC looked at a project that FERC concluded would emit 315 tons per year of greenhouse gases, and FERC said that although the agency had not adopted a threshold for significance yet, that 315 was far below any threshold FERC could plausibly adopt. And FERC could have done the same here, where the 3.6 million tons per year of emissions are 36 times FERC's draft threshold, which in itself was equal to or higher than every other threshold any other agency has proposed or that FERC had ever identified. So FERC may not know where the line is, but FERC doesn't raise any argument as to why the line should be farther beyond the emissions we have here. On the social cost of carbon, we have a case, Earth Reports, which said that FERC is not required to use the social cost of carbon tools to assess significance. And we have another case, Vecinos, that said under a particular regulation, if you raise it, that might be a different analysis, but you didn't raise that regulation, so why isn't this covered by Earth Reports? We didn't raise Vecinos because Vecinos was decided before FERC issued the orders here, and Vecinos is already integrated into the FERC orders. So Earth Reports, on through the Center for Biological Diversity case about the Alaska project, looked at three different arguments that FERC had raised in every case about social cost of carbon. FERC complained that it didn't measure physical impacts, FERC said we don't know what discount rate to use, and then FERC said we don't know where significance is anyway. In Vecinos, the court said that if FERC doesn't have any other way of addressing greenhouse gases, FERC needs to use methods that are generally accepted in the scientific community. Post-Vecinos, when FERC issued the orders that issue here, FERC didn't make two of those three arguments. So I think because Vecinos was already in the background, FERC didn't say social cost of carbon doesn't measure physical effects. I think the reason FERC omitted that is because Vecinos said we don't care. That if that's not a problem for the scientific community, then FERC can't use that argument. And similarly, although FERC had expressed some uncertainty about what discount rate to use, there was a general consensus in the scientific community that you use these range of discount rates as articulated in the social cost of carbon protocol. So having Vecinos, we didn't need to raise Vecinos because FERC kind of attempted to comply with it itself and didn't make two of the arguments. But they did calculate the social cost of carbon, they just didn't take the next step. And are you saying that now in every case they have to both calculate it and take the next step and rely on it? Well, so this court has said that environmental impacts, including greenhouse gas emissions, are a factor that FERC needs to consider and that needs to not just underneath it, but also in its Natural Gas Act public interest analysis. The Council on Environmental Equality has said you should calculate social cost of carbon in every case. Here the problem is that FERC calculated social cost of carbon and then said, we're telling this to the public, but we're not going to use it. FERC explicitly said that the social cost of carbon estimate played no role in FERC's own analysis. And that would potentially be fine if FERC had explained that it was choosing to consider greenhouse gas emissions in some other way. But if FERC is saying we're not using social cost of carbon, but FERC is also not telling us what else it's doing instead, then FERC hasn't met this court's command from the Sable Trail case and others to factor greenhouse gases in. FERC has to do something. Okay. So you're not arguing that they must use the social cost of carbon. You're saying under the facts of this particular case it gave them a way of doing this. Yeah. And I think that, you know, when the Council on Environmental Equality or when other agencies have discussed greenhouse gases or significant greenhouse gases, they just do it through talks rather than needing to monetize the impact. Monetizing the impacts can help inform the public. And we have pointed to social cost of carbon to say, if FERC actually doesn't know whether 3.6 million tons per year is something that you should worry about, the social cost of carbon can let you know that that's enough that you ought to take it seriously. But once FERC starts taking it seriously, then they don't necessarily need to do a cost-benefit analysis of social cost of carbon. They just can't refuse to do anything at all. So I mentioned that this case is distinct from the Center for Biological Diversity case and prior cases because FERC isn't making two out of the three arguments that it made in those prior cases. And because of Vecinos, we'd argue that FERC couldn't have made those arguments even if it had wanted to. So all that FERC has left is its concern that there is no general threshold for when monetized impacts become significant. No court has held that that concern standing alone is enough to justify refusal to use social cost of carbon. And this court should not make that holding. FERC hasn't explained why the policy judgment involved in deciding whether or not a certain level of impact is significant is any different or more difficult than the policy judgments FERC makes all the time for other impacts. For example, here FERC concluded that the visual impact of the turmoil would be significant. The height of the structures, the amount of light at night, the scenery of the surrounding area. FERC said all of those issues made visual impacts and impacts on scenery were significant. And FERC didn't have a general cross-agency standard for how bright a light has to be before an impact is significant. FERC just made its own policy judgment. And that's also not something that's central to FERC's own expertise. FERC is not an agency specifically tasked with thinking about scenery. So FERC hasn't said why greenhouse gases should be different than any of the other impacts that FERC routinely regulates, including in the EIS here where FERC said significant or not significant for everything else. If there are no further questions about greenhouse gases, I'd like to turn to the other air pollution impacts in this case. So this terminal will emit 550 tons per year of nitrogen dioxide. EPA has explained that more nitrogen dioxide is always bad. There's never a point where you've got so much of it that further increases in pollution don't matter. And here, the modeling that FERC relied on concluded that there would be numerous exceedances of the National Ambient Air Quality Standard for nitrogen dioxide in the vicinity of the terminal. I think the highest of those exceedances was 60% above the NAAQS. FERC failed to take a hard look at these nitrogen dioxide emissions for two reasons. The first is that FERC simply misunderstands cumulative effects. FERC concluded that there would be no cumulative impact problem here because the individual incremental impact of this project was individually insignificant. But the central thrust of the cumulative impact regulation and doctrine is to guard against a death by a thousand cuts. And so if that's what you're concerned about, saying that one cut is small, doesn't answer the question. Every court that has considered the issue has held that an impact that is individually insignificant can still be cumulatively significant, as we explain in our briefs. And FERC has recognized that projects with individually insignificant impacts can have a cumulatively significant impact. FERC reached that conclusion for the Rio Grande projects. FERC relied on these significant impact levels, which is a concept that they derived from sort of a different scheme. Can you explain what that is for? Because it wasn't clear to me what significant impact levels – what does that mean? I can try, Your Honor, with the caveat that our cumulative claim and claim of misuse of significant impact levels are distinct. No, I understand they're distinct, but I know that FERC relied on them. So I'm just trying to understand what is that really for? Under the Clean Air Act Prevention of Significant Deterioration Program, a major stationary source cannot be approved if it will cause or contribute to a violation of the National Ambient Air Quality Standard. And that's not a cumulative assessment? So EPA has interpreted that to require an individually significant contribution to the violation of the NAAQS. And EPA has proposed the significant impact levels – here it's a proposal from 2010 that was never finalized – as like an administrative tool that the regulations define as a sufficient but not necessary element of showing a cause and contribute finding. So a project that exceeds the SIL, where air quality will exceed the NAAQS, causes and contributes, and so cannot be permitted under the Clean Air Act. That's what I'm a little bit confused about, because is it as it contributes to the NAAQS? Therefore, is it a cumulative assessment or is it an incremental assessment? It's both. So there was a two-stage modeling here where the modeling was done under the Clean Air Act, which FERC based its NEPA modeling on. You first asked, will emissions exceed the significant impact level without worrying about background concentrations? If so, then you model the background concentrations, and then you ask – and again, the Clean Air Act is not directly at issue in this case. Yeah, no, I understand. You would then ask whether or not the background concentration plus the contribution – or whether this project's contribution on the days when you're going to have a cumulative exceedance of the National Air Quality Standard, the incremental contribution exceeds at the significant impact level. So if background is 188, did this project – is increasing that, or is it going to increase it by more than 7.5, is the proposed significant impact level for nitrogen dioxide? So it's still incremental. It's still incremental, right. And so under the Clean Air Act, even if you have horrific air quality, you don't necessarily have a cause-and-contribute finding if the incremental contribution isn't that big. You might. I mean, EPA – one of our claims here is that FERC borrowed EPA's significant impact level proposal without recognizing EPA's own caveats about that, where EPA has said, even under the Clean Air Act Prevention of Significant Deterioration Program, you might have a cause-and-contribute finding for emissions that are under the significant impact level that you need to do a case-specific analysis. But as a screening tool, is the cumulative impact going to exceed the standard, and if so, is this project's contribution above that? So I want to make sure I understand what you think – what legal requirement was violated here. Is your position essentially that Clean Air Act aside, NEPA imposes a requirement that if the cumulative level is significant, the agency needs to just apply the label significant and then explain, as it usually would explain, why that doesn't warrant stopping the project, but that the problem here was not saying the total level, the cumulative impact is significant? Yes, that's certainly the heart of it, Your Honor, and it's not just whether the cumulatively significant problem of the pollution that everyone agrees is unhealthy would warrant denying the project. FERC also does a more robust investigation of mitigation for significant impacts. That's also in 18 CFR 380.7, where FERC says for every impact you've identified as significant, you have to discuss mitigation of that impact. And here we think that they could have redesigned the terminal to reduce these emissions, even if they were going to still approve the terminal, and that if they had admitted that the cumulative NO2 was a problem, they might have – But in the first instance, you read the NEPA regulations to impose a requirement that the agency has to say, are the direct impacts significant, and then separately, are the cumulative impacts significant, right? Yes, Your Honor. I think that the clearest authority on that is the Fifth Circuit case we set in our race that said that even if you're going to mitigate the impacts to the level of individual insignificance, that doesn't get you out of the obligation to then say, is there a cumulative significance problem as well because of the death by 1,000 cuts scenario? And that – I mean, one of the problems here is FERC didn't explain why the air pollution is so bad. It doesn't – it hasn't addressed are the modeled exceedances due to some other single facility that could be taken care of, or is this actually occurring because of the death of 1,000 cuts? FERC itself has approved eight other projects in the area that FERC identifies as all contributing to the cumulative air pollution problem. FERC says, well, the Commonwealth emissions are not significant because they're only increasing by 1.5% of the max, and the sill is 4%, but then the neighboring CB2 project is going to have a maximum contribution that's about half the significant impact level, and then there are six other projects as well. So it could be that the reason we're in this situation is because of agencies continuing to approve projects like this one that have small but cumulative contributions to the unhealthy air. I see that I'm out of time. I don't know if there are other questions about the significant impact level or the alternatives or other claims. We'll give you a couple minutes to reply. Thank you, Your Honor. Thank you. Good morning. May it please the Court, Susanna Chu for the Federal Energy Regulatory Commission. I'd like to start by saying that Vecinos is actually not the most recent LNG terminal case that has been before this Court. It's the Center for Biological Diversity, which involved the commission's approval of the Alaska LNG terminal under Natural Gas Act Section 3. And that case is directly relevant here because, like this case, it's a purely Section 3 terminal case. There's no Section 7 pipeline involved. So the standard here is that the commission must approve the terminal proposal unless it makes a finding that the terminal is actually inconsistent with the public interest. So it's a different standard than under Section 7, and that is the overarching standard that the commission is working under here. So on the greenhouse gas emissions, it seems that the levels of this project are 36 times the greenhouse gas levels that FERC has proposed as significant. And you held in Northern Gas that if, under anything we would choose, the project would pass, you can make a significance finding. So why isn't this project significant under any proposal that you might adopt as a significance level? Right. So, Your Honor, let me try to explain that. Those two proposed thresholds are, well, there's one proposed threshold that my friends on the other side have been advancing, the 100,000 threshold. And then also there's the Northern Natural Gas case, which you mentioned. So the commission has explained that that 100,000 threshold was an interim number that it had considered using, but it actually has been withdrawn in a proceeding that remains open to public comment. And the commission continues to grapple with this issue of how to assess the potential significance. Even if you're not applying that particular number, is there any chance that the commission is going to choose a level that's 36 times that number? I don't know, Your Honor, because there are different ways, but there potentially could be different ways to make an assessment. And a strict number about the output of the emissions might not be that way. So, for example, there's the social cost of carbon method, which is another possibility that has been advanced. But the commission has explained that- But if we could just stick with these levels, this project is estimated to contribute to 1.7 percent of Louisiana's and 0.06 percent of the U.S.'s total greenhouse gas emissions. I mean, that seems, you don't think that's significant? Is there some level where it would be significant? For example, if it increased Louisiana's greenhouse gas emissions by 20 percent, would you be able to say it's significant even if you haven't yet picked a number or a threshold parameter? No, Your Honor. I think it's- I'm sorry. Your answer is no? If it increased Louisiana's greenhouse gases by 20 percent, you would not say that's significant? I'm sorry. My answer is not no. My answer is that I don't know the answer. I don't know the answer because the commission is continuing to grapple with this issue. That's astounding. So what if it increased Louisiana by 50 percent greenhouse gas emissions? You would still say you don't know if that's significant because you're still grappling with the issue? I mean, I cannot speak for the agency as to whether or not that would be considered a significant impact. But, I mean, I think we- What if it doubled it? What if it increased it by 100 percent? You still don't know if that's significant? I can't say as I stand here before you because the commission has not reached that issue. The issue with global climate change, as the commission explained in the environmental statement, is that there are incremental impacts, and you can't attribute physical global climate change impacts, such as sea level rise or other specific impacts, to a particular project. At least the commission has not yet been able to identify a methodology that would allow it to do so. Now, the northern natural gas is different. I think the bottom line is there's no level at which you would concede that it's significant until the commission has developed whatever parameter it decides it's going to use. I think it's right, Your Honor, that I cannot make that judgment. I'm not asking you personally. I'm asking about the commission, who you represent. Right, but the commission has not yet made- it has not yet found itself able to identify a methodology that would allow it to make this determination. So it is still working on it. But the implication of that is you're saying no matter what the level is, you are never going to say it's significant until the commission decides what this parameter is going to be. Yes, the commission is working on determining if there are parameters that it can apply. I think it's important to remember that in this case, the commission actually has provided even more information than it has ever produced before regarding greenhouse gas emissions. If we go back to what the court has required of it in Sable Trail and in going through up to Earth Reports and Center for Biological Diversity, the commission here, it not only quantified the actual emissions from the terminal, so we have that information, it did the comparison to the national and to the state level emissions, and it also conducted the calculations under the social cost of carbon, although it recognized that that methodology has significant limitations because, of course, it was developed in the context of cost-benefit analyses for agency rulemakings. So can you point to anything in the order that shows any of that information played a role in the commission's actual decision on this project or mitigation measures, consideration of alternatives, or anything? Right, yes. I mean, the discussion is in the orders at paragraph 75 of the authorization order and at paragraph 40 of the rehearing order, and it's in the environmental statement, the discussion of global climate change impacts. It's around joint appendix page 380, excuse me, really around J378. That's where the discussion begins. So the commission is discussing the significant problem of global climate change, but it has not yet been able to find that it can draw a line from the specific project's emissions to make an up-or-down call as to whether it's significant for purposes of climate change, and the court has never required the commission to do that. Nevertheless, the commission is still trying to determine whether or not it can make this determination and whether it should make this determination. And the only implication of making the determination is then you just have to consider other mitigating alternatives. Right, but right. Since you mentioned alternatives, I mean, the commission gave consideration to numerous alternatives, including a no-action alternative, which is not on review before the court. I guess my only point is I don't know why they're being so reluctant to ever find significance until they finish their other work when all they have to do is say it's significant and then consider more alternatives. It seems easier than litigation like this. Right, and I think it's not as easy as it appears. I mean, it may seem easy based on some of the assertions from environmental petitioners. It's not easy. I mean, it's been something that the agency has been grappling with. I mean, this is a bipartisan, independent commission, and we see from the evolution of the cases, the commission is moving towards more and more information in the environmental analysis. That's not what I meant was easy. I think that the results of finding something significant, isn't it just that you then have to consider other mitigating alternatives for this significant factor? And you've already considered a bunch of alternatives. It seems easier to make the finding of significance and consider the alternatives than to be so reluctant to ever make this finding and then have to go through this litigation. I see your point, Your Honor. But I think the commission is really doing its utmost to meet all of its obligations. And I think the commission considered here that it has produced all of the information it has ever been required to produce by the court and then some. And it is still grappling with this issue of whether it should or should not make this finding. And I agree. I think that the commission has already considered all of the alternatives. It's addressed mitigation. It's taken a deep dive into the environmental analysis here. So it has already done all of the analysis. But as to making this up or down call, it is a fundamentally different call, I think, than some of the other significance findings. The visual impacts finding, for example, that my friend brought up, I mean that's a much more concrete finding. And if you look at the discussion in the authorization order, the commission there was looking at visual renderings of the terminal from different vantage points. Counsel, can I ask you to address another issue? It's the cumulative impacts issue. So as I understand it, their argument, at least, is that you essentially looked at the incremental effect on NO2 emissions, said that that was insignificant, and for that reason said the cumulative impact was insignificant. What does that get wrong? Because if that's what you did, it seems arbitrary. Right. So that's not exactly how I see it, Your Honor. The commission, it looked at the impacts of all of the background sources in the region along with the terminal, the proposed terminal. So that is the second stage of that air quality model that I believe Mr. Matthews discussed. That is a cumulative impact model. And so there the commission is looking at all of the emissions from all of the background sources. It's getting this information from the state of Louisiana. And the commission actually, in addition, reviewed emissions from the ships related to the LNG terminal. I appreciate that they did a thorough analysis of what the cumulative levels were. But I guess it seems like there's at least a substantial argument that what NEPA does is it says you have to look at the total level of emissions of this particular pollutant, and if it is at a level that is significant, and this project contributes to it even a little bit, the cumulative level is significant. The total level is significant. Isn't that? So essentially you're way above the NAAQS, and this project is bumping it up just a little bit. You would say the direct impact is not significant, but the cumulative level is. Right? Right. Can I back up for one moment, Your Honor? Please. This region is in attainment. It is in compliance with the NAAQS. So I just want to mention that threshold, that this Cameron Parish, you know, this whole. I thought the analysis was on some days it might be above the NAAQS, on some days it wouldn't. But the problem was on the days when it would be above the NAAQS, you relied on the significant impact levels, which is an incremental measure, to say that it wasn't significant, thereby just by definition not looking at the cumulative effects for those particular days. Right. Yes. So what I just wanted to mention is just that, you know, as a region, Cameron Parish is in compliance with the NAAQS. So what the commission is doing here is this air quality model is a worst-case scenario analysis. Right? They're assuming that the terminal is operating at full tilt. And they do this initial analysis, which did, is an initial screen that did find that the emissions were going above the significant impact level, such that an additional analysis had to be done. The significant impact level, as I understand it, is if it's below that threshold, that's basically de minimis. Then there's no additional analysis done. So since the initial screen went above the significant impact level, it proceeded to the cumulative impacts analysis, which involved an assessment of all of the background sources. And it compared the contribution of the terminal to the potential, the highest potential NAAQS exceedance. And it found that the terminal's contribution was just minuscule. I forget the specific number. I believe it was 0.0004 or something along those lines. So, you know, that is the number that the commission was looking at. This is my difficulty. This is my difficulty, right? That's saying the incremental addition from this facility is very small. Why is that relevant to the total level, which is what the cumulative impacts analysis is asking you to look at? Right. I think that what the model was finding was potential NAAQS exceedances at specific times and in specific places. So that's why the commission is taking all of that into account. And overall, the whole region is in compliance. So the commission found that this proposal was environmentally acceptable. Okay. So the point is that when we look at that, the overall level when you zoom out from particular sources within the terminal is in attainment for NO2. I think that's right. I mean, when you zoom out to the ñ I mean, I think it's right that when you zoom out completely, the region generally is in attainment, and you're looking at whether there might be potential exceedances under a model that's just looking ñ it's a computer-based model. And it's really measuring the worst case possible scenario. So I read their brief to paint the following picture, that in some respect there's a NAAQS exceedance. And then when you looked at it, you found out that this project is only contributing a little bit to that NAAQS exceedance. And therefore, you have to say the total impact, which is just this total level, is by definition significant. Are you telling me that that's just inaccurate in terms of the facts on the ground? I think it's not right that the commission has to find significance just based on some potential model NAAQS exceedances. I think using the significant impact levels, I think that that is a methodology that is ñ I mean, that's an EPA methodology. I think that the commission reasonably used that methodology. And I don't think there's any problem with the actual methodology here. But the thing is, if you choose to use this significant impact level methodology, it has to not be in an arbitrary and capricious way. And the overall test is cumulative impacts. And what I understand that the commission did was on the days when you ran the model and the NAAQS were exceeded, and you had to take a closer look because the NAAQS were exceeded, you said, well, the significant impact levels haven't been exceeded. But that is an incremental analysis and not a cumulative effects analysis. Because the whole reason you were looking at those days was because on the cumulative effects, you had exceeded the NAAQS. But then you reverted to this incremental test in order to say, but that's not significant. And why is that not arbitrary and capricious? Well, I think this is consistent with the methodology the commission typically uses. And I think that because they were modeling all of the sources, I mean, they're looking at the impacts. And in the future, in the event that another project is proposed, the commission will again be doing this analysis. So it's certainly possible at some point in time that this analysis will tip over into significance. But that's not what the commission found here. I had just one last subject I wanted to ask you about, and that is where you started, which is the public interest determination. Yes, Your Honor. So I appreciate that there's a presumption in the statute that there are certain public benefits. But in every single case I've seen, there was some discussion from the commission of what the public benefits of the projects are. And in other words, some effort to explain how strong this presumption is. But that's just absent here. And why isn't that a basis for remand, for there to be some explanation of what the public benefit is in this case? Well, I think, Your Honor, that the statute dictates that they're, you know, that the exports are presumed to be in the public interest here. The commission actually did state in the authorization order that here the Department of Energy has already authorized exports for the full capacity of the project to free trade agreement countries. And so that, you know, does create a presumption that these, that this is statutorily in the public interest. Yeah, I think that same paragraph that you're referring to goes on to say, we are not going to do any independent consideration of the benefits. You know, I'm not sure if the commission said exactly those words, but, you know, I don't believe it was necessary in this case because of the statutory presumption. And the commission did all of the environmental analysis here, and I think it's kind of baked into the discussion in the environmental analysis, you know, that this enables exports of natural gas to free trade agreement countries.  The section was environmentally acceptable, had limited adverse environmental impacts. So I think the commission was, felt it was on firm ground in approving because it's required to do so. So, you know, maybe there's more discussion in other cases, but I don't think it was required here. Any more questions? No. Any more questions? All right. Thank you. Thank you, Your Honors. Mr. Longstreth. Thank you, Your Honors. John Longstreth with the Project Developers here. I wanted to start going back to the cumulative impacts analysis and all that discussion because I think it is confusing a little bit in terms of exactly what argument they're presenting. The point that FERC Council made about the background emissions is, I think, an important point. So the way this works is it goes in stages. So the first stage they do is basically kind of look at the discharge, basically, before you do any air modeling at all. You look to see just the place of the discharge, are you over the levels? And that is they found four in this particular case. One-hour NOx, annual NOx, one-hour SO2, and 24-hour PM something. I'm not sure what it is. So that's when you do this cumulative impact analysis. In other words, if that's not triggered, that's a screen. You don't have to look at anything else. They're not challenging that as far as I understand it. They're not challenging really any of the process here in terms of the actual calculations. Then you go into the cumulative impacts analysis, and that's when you look at, as FERC Council mentioned, all the background sources. Offsite inventory within the area of impact plus 15 kilometers. All major sources within the area of impact from 20 kilometers. You're looking at all the sources in the area. When they did that analysis, three of them fell away. The only thing that was left was one-hour nitrogen dioxide. That was the only thing left in the case. So that was the thing that they looked at with respect to the significant impact analysis. They said, okay, we already know, and this gets to the cumulative impact analysis, we already know when you look at all these other sources, the six other projects that he mentioned and all that. We know when you're looking at this that you're going to be over the NOx for that one specific pollutant here. So now we're going to look to see, because again, NEPA is not a statute that requires a solution. It doesn't say, because we're over the NOx, you can't have this project. We're just looking at what this tells us. So we're looking again, and that's when we use the significant impact level. We say, okay, we're over the NOx. How much does this project matter? Because that's what they have in front of them, approving this project. And they said, not just that it was minor, not just that it wasn't that much, but that it was almost a vanishingly small portion of it. I think even counting the mobile sources, I think Bert Council mentioned .0055, .0018% or something. And so at some point, I think you're allowed to say when you do that analysis, looking at all of it, with all the background in there, this is so small that we are not going to require, based on this very small analysis, we're not going to require to go further on that analysis. How is that consistent with the directive that you look at cumulative effects? Because you've already looked at the cumulative impacts of the other sources in there, because that was the stage two thing that you did. This is the question I have when I'm trying to figure out the argument here, which is suppose you do this cumulative impact analysis on the contribution. We already know from the cumulative impact analysis that was done that when you put all the sources together, you're over the next level for this one pollutant measured in this one way. So I'm not sure what additional information we're going to get. But wasn't that all you need? Now it has a cumulative effect. It's significant. And now you just look at alternatives. Well, but they did look at that. Well, because the question is now you're looking at the... Because the question is the approval of this project, and the approval of this project says that whatever is going on else, this particular project has so little to do with it, we're not going to go further. As you said, NEPA is a procedural and pretty formal statute. So formally, why isn't the right answer that this page just should have said, the cumulative impact is significant, but the contribution from this project is so small and so forth. It just literally doesn't compute in my head that it's not a significant level. I think they did sort of say that because they wouldn't have got... I mean, I think, well, I don't know if they said it specifically, but it's inherent in the process because you don't get to the SIL unless you find that looking at all these background sources, you've got a max exceeds. So that's what confused me about it. But the commission has discretion. It didn't have to go to that second stage. It just should have said this is significant. It's a significant cumulative impact. Now we just look at alternatives anyway in other contexts. I'm sorry. No, it does have to go to that second stage because that second stage is when three of the four exceedances at the first stage got thrown out of us. That second stage showed you that the only thing we had to worry about was the one-hour nitrogen dioxide because that was the only thing looking at all the cumulative impacts triggered. Then the question is, well, what do you do with that? And the question is, well, we're just looking at this. We'll get this one thing. We're looking to see how significant is the contribution from that. And it's so small that for our informational purposes, we don't think we need to go further than that. So that was the third step. So maybe you didn't need that third step because once you figured out the nitrogen dioxide was higher. But I think that gets to the question, and I think, Judge Pan, you were looking at that with respect. There's a little bit of a talismanic view here on significance. I mean, you look at significance initially, but there's really no authority, legal authority, for example, for saying that greenhouse gas emissions have to be determined to be significant. I think, Judge Garcia, you asked that question. You mentioned a Fifth Circuit mitigation case or something like that, which is kind of a second order. But we do have precedent on this, the Center for Biological Diversity case. And by the way, another case, Delaware Riverkeeper, that's in 45F 4th, that's cited in Center for Biological Diversity. All of those are post-facitos cases. So, I mean, the idea that this is the first time you've had it since then, I'm not sure where that comes from. But then also, Judge Pan, you mentioned the waiver issue here. If you're going to be distinguishing this case from Center for Biology to Diversity or Delaware Riverkeeper, two unpublished decisions were at least the fifth or the sixth bite of the apple here. The question is, how are you going to distinguish those? In vicinos, they distinguished it because there was a regulation that the court held needed to be considered. As you pointed out, that regulation was not raised in this case. It's not even mentioned in their briefs. So you asked Petitioner's counsel about that. He said, well, we didn't have to because we were after vicinos. And the suggestion was that somehow FERC had changed its whole analysis with respect to vicinos, more or less accepting the decision. Vicinos was a remand decision. We're involved in that case. The commission explained that's going to be one of the next cases you have. But the commission explained in that case, they didn't concede that they were all wrong because of this regulation. They explained very carefully why, given the regulation, they still could not make this significance binding. So all of this is a way of saying, I'm, of course, not asking you to anticipate this case. What I'm saying is the argument that they didn't waive reliance on this regulation because somehow their post-vicinos and FERC had accepted their argument is absolutely not true. They have no way to distinguish this case from Center for Biological Diversity, from Delaware Keeper, from the five or six cases where they've made this argument and it's been rejected. The final thing they said, and this was also about the distinct as well, in this particular case, they only relied on one order. FERC has had three reasons. In this case, they just didn't rely on one of these or two of these because of vicinos. If you look at the rehearing order, paragraph 40, they talk about the fact that there's no way for the commission to determine credibly whether the reasonably foreseeable GHG emissions are significant or not significant in terms of their impact on global climate change. That's a very, very general statement. That's not relying on, that's not giving up any argument. Then they say currently there are no criteria to identify what monetized values are significant. Then they cite in Note 129, they cite the Tennessee Gas Pipeline, they cite the Mountain Valley Pipeline, giving several reasons why it believed the petitioner's preferred metric is not appropriate. This is JA 113, Rehearing Order 40. I don't read that and say they are now walking away. Mountain Valley Pipeline, that was a case when the three organizations... All right, Mr. Munstick, you're way over your time. Oh, I'm sorry. But, yeah, there's no way to distinguish their precedent in that case. Thank you. Why don't you take two minutes?  Thank you, Your Honor. This case is distinct from Center for Biological Diversity, the Delaware River case, and there's further reasons we state it, that FERC did not make two of the arguments about social cost of carbon from those cases. FERC does not complain that the social cost of carbon doesn't measure physical effects. FERC does not express concern about the choice of discount rate. It's true that those D.C. Circuit decisions were decided after Vecinos, but the FERC orders at issue in those decisions preceded Vecinos, which is why Vecinos isn't reflected in the records there, but Vecinos did change the reasoning FERC used in its issue here. Second, counsel for FERC say that the FERC is still working on how to figure out the significance of greenhouse gas emissions. I don't believe that that's correct. In the authorization order at issue here, FERC said we aren't making a significance determination because we have this ongoing proceeding about how we're going to do this. In the rehearing order, FERC acknowledged that that draft had been rescinded. I don't believe FERC is still doing any work on the greenhouse gas policy, and FERC didn't say we're figuring it out. FERC said it is impossible to do it. That's why we're not going to do it here. I don't know that there is some better analysis from FERC that is going to be coming in another case. Also, FERC didn't make any argument here as to why these emissions are insignificant. It's not like there are arguments for finding significance and finding insignificance, and FERC hasn't decided which are the more compelling. FERC is just saying we don't know what to do without having any plausible theory under which you could decide that these emissions were insignificant. On the air pollution issues, I think both opposing counsel mentioned something about a .005% increase. That's not the maximum increase from this project. That's on the day when air is the worst, that this project level is very small, but on other days where the background is not as high, this project will have a much larger contribution. We identified a 2.79 micrograms per cubic meter increase when this project is the biggest problem, but there's still a max exceedance. FERC's counsel mentioned that the area is currently in attainment. Having conducted this modeling that shows exceedances, FERC can't walk away from that modeling now. The modeling says when this project starts operating, and other facilities that have been approved but aren't yet constructed are also operating at that point in the future, we think the air is going to be, frankly, really bad. Having based its analysis of what the air will be like when this project starts operating on that modeling, FERC can't now say, but that modeling doesn't really matter because the air is not so bad right now. One last point on the public interest. This question of whether or not issues are significant matters because of how FERC does its public interest analysis. FERC summarizes that on page 26 of its brief. FERC explains that there is a presumption favoring exports. Where environmental impacts are insignificant, FERC says there's nothing to weigh. FERC stops the analysis there. Here, where FERC dismissed almost all of the impacts other than visual as insignificant, FERC said, since there's nothing to weigh against benefit, we don't need to worry about benefit. But if FERC had to admit that some of these impacts were significant, then FERC would need to do some balancing. FERC would have to explain why does this project provide some benefits that outweigh the significant impacts. Again, that's not NEPA that says if an impact is significant, then you have to address it in your public interest balancing, but that is FERC's practice. The rationale FERC gives under the Natural Gas Act is to say, our NEPA insignificant findings mean we don't have anything else to do here. I see that I'm over my time, but if there's any further questions. Thank you.
judges: Henderson, Pan, Garcia